## JONATHAN ELDRIDGE et al. versus BENJAMIN LANCY.

The master and two seamen of a fishing vessel, being the owners of the fare of fish
taken during a voyage, placed the same in the hands of L, upon his written agree-
ment to cure and sell the fish and account to them for the proceeds. While it was
in his possession, it was attached, in an action brought by H against the master,
for supplies furnished for the voyage, and was delivered by the officer to L, as his
bailee, who sold it, without the consent of the master and before judgment, and
paid over the proceeds to the officer. After the attachment the master and the two
seamen assigned their interest in the property to B, and authorized him to demand
and receive it in their names but for his own benefit. In an action brought by B in
the name of the two seamen (who survived the master) against L, upon his writ-
ten agreement, it was *held*, that supposing the attachment to be valid, the property
passed to B by the assignment, two thirds of it absolutely and the master's third
subject to the attachment ; that the attachment was dissolved by the sale, and the
assignment then took full effect as to such third ; and that the master's ratifica-
tion of the sale subsequently to the assignment, and the order of the plaintiffs to
discontinue the suit brought by B, were of no effect.

THIS was an action on the case, commenced on August 18,
1829, upon the following writing : " August 29, 1823. Re-
ceived of Obadiah Abby, Jonathan Eldridge and Nymphas
Baxter, one fare of fish to cure for them, and send them to
the best market and return the proceeds to them or their or-
der, after deducting one thirteenth for curing and other ex-
penses that may accrue    Benjamin Lancy."

On November 17, 1823, by an indorsement on this receipt
and obligation, Abby, Eldridge and Baxter, in consideration
of $190 paid them by Eleazer Baker, sold and assigned to
Baker, their claim against Lancy and all the fish in his hands

as mentioned in the receipt, and appointed Baker their lawful attorney irrevocable, in their names, but to his sole use, to demand and receive of Lancy all the fish and the proceeds thereof, and to prosecute any action at law for the recovery thereof, and upon receipt thereof in their names to give proper discharges thereof.

Notice of the assignment was given to Lancy on December 1, 1823.

This action was brought by Baker in the names of Eldridge and Baxter, who survived Abby.

On the part of the defendant it was proved, that on October 22, 1823, tne fish were attached by one Myrick, a deputy sheriff, in a suit in favor of one Haskell against Abby, master of the schooner Primrose, for supplies furnished for the voyage on which the fish were taken, and Lancy became bailee to the officer for the fish in his hands. On the next day, Mr. J. Reed, the attorney of Haskell, fearing that the fish would be lost if not sold, gave his consent to the sale of them, by a writing as follows : " Whereas John C. Haskell has attached about ninety quintals of codfish as the property of Obadiah Abby, and whereas Benjamin Lancy has given a receipt to the sheriff for said fish, I hereby consent that Lancy may sell said fish, if Abby is willing, provided he use due care and diligence in selling them, and retain the money for the benefit of Haskell if he recovers in his suit."

On January 13, 1824, Lancy, having sold the fish for their full value, paid $153·45, the amount of the proceeds (deducting one thirteenth and the expenses) to Myrick, in discharge of his liability to him as bailee.

In September 1824, Haskell recovered judgment against Abby for $558, and in October execution was issued thereon, upon which Myrick indorsed the amount received of Lancy, and paid over the same to Haskell.

On November 24, 1824, Abby gave a certificate, approving of the directions of Haskell's attorney that the fish should be sold, and of the sale by Lancy. He gave no previous order or consent for the sale. On August 27, 1829, Eldridge and Baxter gave certificates, that they relinquished to Haskell all right, title and interest in the fish caught in the schooner

30 *

Eldridge
*v.*
Lancy.

Primrose in 1823, and the proceeds thereof, and that no person had a right to sue for or recover in their names or either of them, any part of the proceeds of the voyage, the value being received in the outfits of the schooner. They also gave orders to discontinue this suit.

It further appeared in evidence, that when the assignment to Baker was made, he gave to Baxter a writing, dated November 17, 1823, as follows : " Received of O. Abby, J. Eldridge and N. Baxter, a receipt signed by B. Lancy for a fare of fish, payable to them or their order, and when collected I promise to pay one third part of all the money I receive of said Lancy to N. Baxter or his order, after deducting one third of the expense and trouble of collecting it and fifteen dollars towards my demands against him. Eleazer Baker."

At the time of the assignment to Baker, the assignors were all notoriously insolvent.

It was proved that Abby was master of the fishing vessel, that Baxter and Eldridge were hands on board, and that the fishing stores were obtained of Haskell.

If upon these facts the Court should be of opinion that the plaintiff was entitled to recover, the defendant was to be defaulted ; otherwise the plaintiff was to become nonsuit.

*Oct. 20th.*   *J. Reed* and *T. Reed*, for the defendant, contended that the master had a lien on the fish, to pay for the outfits, and that it was subject to attachment in an action for the outfits brought against the master ; that if after the defendant's receipt the property was to be considered as belonging to Abby, Eldridge and Baxter, in equal shares, the attachment of Abby's third was valid ; that Haskell's consent to the sale under the attachment was given upon the condition that Abby also should consent, but the sale having been made without Abby's consent, the attachment remained in force, and the bailee was bound to pay the proceeds of the fish to the officer ; that all the assignors being insolvent, Baker's promise in favor of Baxter made the assignment fraudulent in respect to Baxter's creditors, and being bad in part, it was bad in the whole.

*Marston*, on the other side, said that if Abby had a lien, he relinquished it by joining in the delivery to Lancy ; that if it was not so relinquished, still it was not to be enforced by a

suit against the master; that the acts done by the assignors subsequently to the assignment could not invalidate the assignment; that only one undivided third of the property was liable to attachment in the suit against Abby; that the attachment failed by reason of a non-compliance with the requisites of the law in selling the property attached, and Abby's assignment then took effect in full.

*Per Curiam.* The defendant objects that this action cannot be sustained, because the nominal plaintiffs have relinquished to Haskell all their interest in the fish which was put into the defendant's hands; that the suit was brought without their authority, and that they desire to have it discontinued. In answer to this objection an assignment is produced, ol a date prior to the commencement of the action, conveying all their interest to Baker. He thereby became the owner of the fish, and they authorized him expressly to use their names for his own benefit. In the case of an equitable assignment of a chose in action, the assignee has a right to use the name of the assignor to enforce the demand. This objection therefore cannot prevail. The suit is rightfully in Court, and is to be determined upon its merits.

While the property was in the hands of Lancy, it was attached in a suit against Abby. If it was competent to the officer to attach the whole, yet in levying the execution he could lawfully sell only the right of the debtor. It would seem then that the two plaintiffs could maintain this action for their two thirds of the property.

By the assignment the interest of Eldridge and Baxter pass ed absolutely; but Abby's interest passed subject to the lien created by the attachment. We must then inquire whether the attachment was dissolved; for if it was, the sale of Abby's interest became absolute. When the attachment was made, the fish was put into the hands of Lancy, and he became bailee for the officer. To preserve his lien, the officer must retain either actual or constructive possession of the chattel attached. Under these circumstances Lancy sold the fish, but without authority from all the parties concerned. It is true, Haskell authorized a sale, but it was on condition that Abby should consent to it; and if he had consented, the sale would have

*Eldridge*
*v.*
*Lancy.*

*Oct. 21st.*

been lawful.    But Lancy sold without such consent ; and though Abby subsequently, on November 24, 1824, ratified the sale, he then stood in such a situation that his ratification would be of no avail.    He had assigned his interest to Baker, and he therefore could not ratify a previous unauthorized act in relation to the property.    It is not pretended that the sale was made in pursuance of the statute allowing a sale of property attached on mesne process, and not being authorized by the parties, the operation of it was to dissolve the attachment and leave the assignment to Baker to take effect.

This view proceeds upon the ground of the assignment being *bonâ fide*.    A suggestion has been made, that it was fraudulent, by reason of Baker's promise to account to Baxter for a portion of the property.    This does not *per se* render it fraudulent.    There might be a secret trust which would render it invalid as against creditors, and which would be a proper subject of inquiry for a jury ; but no one except a purchaser or a creditor of Baxter could avoid it.    No such purchaser or creditor is now before us, and it is not necessary to consider whether the assignment be fraudulent and void as between Baker and Baxter.

The Court being of opinion, that the assignment passed the property to Baker, as between Baker and the plaintiffs, absolutely, and as between Baker and Abby, subject to a lien which was dissolved, judgment is to be rendered in favor of the plaintiffs, for the benefit of Baker